[Criminal No. 615.   Filed June 19, 1925.]

[236 Pac. 1112.]

# ORVILLE MORGAN, Appellant, v. STATE, Respondent.

**1. CRIMINAL LAW—REFUSAL TO DISCHARGE DEFENDANT HELD PROPER, THOUGH JURY HAD TWICE DISAGREED.**—It was not error in a murder prosecution to refuse to discharge defendant, though he had been twice tried for murder, jury having been discharged in each instance after they disagreed and reported in open court their failure to reach a verdict; inference being that jury was properly discharged under Penal Code of 1913, section 1077, and there being, under section 1078, no limit, other than court's discretion, on the number of trials.

**2. CRIMINAL LAW — PERMITTING JURY TO DELIBERATE IN COURTROOM HELD NOT REVERSIBLE ERROR.**—Permitting jury in prosecution for murder, to deliberate in courtroom, in which had been left a copy of the information and a map demonstrative of state's evidence, *held* not ground for reversal; there being no showing that jury knew objects were in the room.

**3. HOMICIDE—EVIDENCE HELD SUFFICIENT TO SUSTAIN CONVICTION FOR MANSLAUGHTER.**—Evidence *held* sufficient to sustain conviction for manslaughter.

**4. CRIMINAL LAW—ADMISSION IN EVIDENCE OF GUN FOUND NEAR SCENE WAS NOT ERROR, WHERE DEFENDANT SHOWN TO POSSESS SIMILAR WEAPON.**—Where, in prosecution for murder, it appeared that deceased had died from a gunshot wound, admission in evidence of a gun, found the morning after and near the scene of the tragedy, was not error, where there was evidence connecting defendant with the possession of a similar weapon.

**5. CRIMINAL LAW—REMARK BY COUNTY ATTORNEY, OBJECTING TO ARGUMENT OF DEFENSE, HELD NOT REVERSIBLE ERROR.** — Where, in prosecution for murder, defense argued that jury should not consider a revolver admitted in evidence, because it had not been proven of the same caliber as that which inflicted the fatal wound,

1.  See 8 R. C. L. 158.
2.  See 16 R. C. L. 302.
3.  See 8 R. C. L. 181.

remark by county attorney, objecting to such argument, but not suggesting how it should be considered, or weight to be given it, *held* not reversible error.

See (1.) 16 **C. J.,** p. 254.   (2) 16 **C. J.,** p. 1082.   (3) 30 **C. J.,** p. 316.   (4) 16 **C. J.,** p. 619.   (5) 16 **C. J.,** p. 894 (1926 Anno.).

APPEAL from a judgment of the Superior Court of the County of Maricopa.  M. T. Phelps, Judge. Affirmed.

Mr. R. H. Brumback, Mr. E. B. Goodwin, and Mr. T. J. Croaff, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson, and Mr. Frank J. Duffy, Assistant Attorneys General, for the State.

LOCKWOOD, J.—Orville Morgan, hereinafter called defendant, was informed against for the murder of one Glen Woods, hereinafter called deceased. He was tried therefor three times; the jury disagreeing at the first two trials, and on the third returning a verdict of manslaughter. He was sentenced to serve from seven to ten years in the state prison, and is now presenting his appeal from that judgment to this court.

There are some eight assignments of error, raising five questions of law, which we will discuss.  The first is that the court should have discharged the defendant, because he had already been twice tried, and the record does not show affirmatively that the jury in the previous trials was discharged for the reasons set forth in the last clause of section 1077, Penal Code of 1913, which reads as follows:

" . . . Unless at the expiration of such time as the court may deem proper it satisfactorily appears that there is no reasonable probability that the jury can agree."

We do not think the point well taken. The record shows that in both cases the jury reported in open court it had not reached a verdict and was then discharged from further consideration of the case; it being immediately reset for trial at the request of defendant. We think the natural inference from the record is that the jury was discharged for the reasons given in section 1077, and that under these circumstances, and the provisions of section 1078, Penal Code of 1913, there is no limit to the number of trials but the discretion of the court.

The next point is that the jury deliberated in the courtroom, in which by inadvertence there had been left a copy of the information and a map used by one of the state's witnesses to demonstrate his evidence. There is nothing to show that the jury ever knew these objects were left in the courtroom, much less that they used or considered them. In many of the counties of this state no suitable room for the deliberation of the jury is provided, and they are necessarily compelled to use the general courtroom for that purpose; all other persons, of course, being excluded at the time. While care should be used in such cases to see that no prejudicial matter is left in the courtroom, yet we will not find reversible error under the circumstances like those above stated.

The other questions raised require a brief summary of the evidence introduced by the state, which is to the following effect.

About 1:30 A. M. July 11th, 1924, one Bjorneby, who lived about a quarter of a mile from the ranch of deceased, was awakened by defendant, who had been stopping at the Woods place. The latter stated that Woods had been shot by some unknown person, and asked Bjorneby to come down to the ranch right away. He did so, and found Woods lying on his bed outside of the house, apparently lifeless. After

bringing a Mrs. Mullens down to remain at the ranch, Bjorneby went to Gila Bend and told Dr. H. L. Richards and Constable Frank Wedner. All three returned to the Woods ranch, arriving about 4 A. M. The doctor's testimony shows that deceased was killed by a bullet, which entered the back of his head, lodging just under the skin of the forehead. The bullet was admitted in evidence, but there is nothing in the record showing its caliber. Wedner at the time searched the premises for weapons, but found only a small Colt's automatic and a .22 rifle. The next day the coroner's jury met, a good many spectators being present, and one Donald Cox found a .41 caliber Colt's revolver under the steps of the house. There was some dirt in the barrel of the gun, and marks on the ground as though it had been hurriedly pushed under the house, and five chambers were loaded and one empty. It was identified as the property of W. T. Williams, who had missed it from the hotel in Gila Bend about a month before, during a time when defendant was stopping at the hotel. It also appeared that, two or three days before Woods was killed, defendant had purchased some cartridges in Gila Bend which fitted the revolver found.

In addition to this, one Mariano Juari testified that about 10:30 P. M. the night of the killing, while he was in the field irrigating, he heard two men, whom he identified by their voices and in other ways as defendant and deceased, at the Woods house quarreling about money matters. About fifteen minutes later he heard a single shot, apparently from a heavy gun. Five minutes after defendant came walking by where the witness was, but when the latter's dog ran after him, and witness called the dog back, defendant turned back in the direction in which he had come, without saying anything. This occurred an hour and a half before defendant appeared at the house of

Bjorneby, and the evidence was direct and positive to within a few minutes of the time of all of these incidents. Juari testified through an interpreter, but said on cross-examination that he both understood and talked a little English.

This is substantially the evidence on which the state relies for conviction. Is it sufficient to sustain one? While it is circumstantial, and not as strong as has been offered in many cases, yet we cannot say a verdict of guilty could not be sustained thereon. Obviously it hinges on the credibility of the witness Juari. If it is true, as he testified, that deceased and defendant were quarreling about money at 10:30 P. M., that a shot was fired at the Woods house fifteen minutes later, and a few minutes thereafter defendant was wandering around under the circumstances testified to, and did not show up with an account of the killing at the nearest house, only a quarter of a mile away, for an hour and a half, a reasonable man would be justified in inferring he had done the killing. True, there was evidence tending to discredit the witness; but that was a matter for the jury, and it is plain from the verdict that they believed him.

The next objection raised was to the admissibility of the revolver and cartridges, and testimony in regard to the purchase of cartridges of a similar caliber by defendant. The evidence showed deceased died as the result of a gunshot wound. A weapon which might have caused the wound was found next morning near the scene of the tragedy, under circumstances indicating it had been hastily concealed, and there was evidence connecting the defendant with the use and possession of a weapon of that character. It also appeared that he resided at the Woods house, and was there at the time of the killing, and, with the exception of a little interval, up to the time of the discovery of the gun and his arrest. We think the evidence was

admissible; its weight and effect, of course, being for the jury. *State* v. *Aspara,* 113 La. 940, 37 South. 883; *People* v. *Mar Gin Suie,* 11 Cal. App. 42, 103 Pac. 951.

The last point is that the remarks of the county attorney constituted reversible error. From the record it appears the defense was arguing to the jury that they could not consider the revolver admitted in evidence, for the reason that it had not been proved of the same caliber as that which caused the death of Woods. The remark of the county attorney was an objection to such a line of argument, he contending that, since it had been regularly admitted in evidence, the jury had a right to consider it; but he did not in any manner suggest how it should be considered, or what weight should be given to it. In this he was, of course, correct, and the trial court properly sustained his objection. Counsel may not, even in the heat of argument, misstate the law, and the county attorney was within his rights in protesting against such a misstatement.

There being no error in the rulings of law at the trial, and the jury being the sole judges of the weight of the evidence and the credibility of the witnesses, the judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.